IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FREDRICK J. BRANDT,

                Plaintiff,            OPINION & ORDER

  v.

                                          12-cv-385-wmc

JUDGE NEAL A. NIELSEN,

                Defendant.

---

FREDRICK J. BRANDT,

                Plaintiff,            OPINION & ORDER

  v.

                                          12-cv-417-wmc

JUDGE DOUGLAS T. FOX,
STEPHEN D. WILLETT, KATHLEEN
ANN BRANDT, PRICE COUNTY,
TAYLOR COUNTY, and ALIS A. FOX,

                Defendants.

---

In these are two proposed civil actions, plaintiff Fredrick Brandt alleges that various defendants violated his rights. Since Brandt has been given leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915, in both his cases, the next step is determining whether Brandt's proposed actions (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek money damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Because Brandt identifies no defendants from whom he can obtain the relief sought, both his suits will be dismissed with prejudice.

ALLEGATIONS OF FACT

In addressing a *pro se* litigant's pleadings, the court must read the allegations generously. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). For the purposes of this order, the court accepts the plaintiff's well-pled allegations as true and assumes the following facts:

**I. The First Lawsuit ('385)**

Brandt was in court before Judge Neal A. Nielsen of the Vilas County Circuit Court on criminal charges. He had been given mind-altering drugs by the court, which allegedly affected his behavior in a way that made him easier to influence. Brandt was also on a significant amount of morphine given to him by the jail and/or court, enough that his later detoxification required doubling his clonidine dosage. In addition, his court-provided attorney, Voss, could not physically hear what was said in court, but the court never gave Voss a hearing test. Finally, at one point prior to the trial, Voss also talked Brandt out of "doing all that [Brandt] asked," a task made easier by the drugs' effects.

Brandt was convicted of the criminal charges. At Brandt's sentencing, he told the court that he had been on drugs during the trial. Judge Nielsen became angry, saying "I think you got a fair trial" and slammed his gavel down. Brandt was sentenced to three and a half years in prison and four and a half years "on paper" because of these events.

Brandt also told his appellate lawyer, Olsen, an assistant state public defender, about the drugs. While Olsen reported looking up these drugs in a Physicians' Desk Reference, he allegedly looked only at a single drug, rather than multiple drugs, failing to understand the cumulative effect of "all three drugs in any one person." Brandt wrote four letters to Olsen's bosses complaining about his performance, which were then forwarded to Olsen

himself.  As a result, Olsen became angry and "put [Brandt] in duress."  Olsen later told Brandt that he should either (1) fire Olsen and do everything himself, or (2) let Olsen do as he wished and, if Brandt didn't like it, he should "sue [him]."  Finally, Olsen allegedly spoke to Voss at some point, and Voss told Olsen he could not physically hear in court, but Olsen did nothing about it.

Brandt eventually got a second hearing in front of Judge Nielsen.  After Judge Nielsen informed the court reporter that they were done, and the court reporter stopped recording.  Judge Nielsen then allegedly said, "Mr. Brandt, you may not have done this crime, you may never do this crime, but just because you didn't stand up in court I'm not giving you [a] new trial."  During his time in prison, Brandt was not allowed to attend his own divorce hearing and everything he had was taken away, including thousands of dollars.

Brandt also alleges generally that:  the judges "in the northern woods" are not impartial and act instead on motivations like money and personal emotion; state employees take police cars to the bars and drink; they "have people doing drugs in [their] home"; and parole officers lie and use fear to control people.  Finally, he alleges that lawyers, the district attorney, judges, state workers and guards all "conspire" with one another and work together to unspecified ends.

In case number '385, Brandt proposes to sue Judge Nielsen for "the injustice he caused" and for negligence.  As relief, Brandt asks this court for his "name back" because he "did not do this crime."

**II. The Second Lawsuit ('417)**

Brandt's second lawsuit focuses on one of the same events as the first, including Brandt's inability to attend his divorce hearing. Brandt alleges that "everyone" knew he was in prison and that he told the guards "AT LEAST THREE TIMES" that he wanted to be at the divorce hearing. A few weeks before, in particular, he allegedly spoke to a guard named "Rockie," who said that someone would come and get him for the hearing. The final time he asked to attend the hearing, the guard came back and told him, "[T]hey [were] not coming to get [him]. The court is not sending anyone." Judge Douglas T. Fox, who presided over the divorce, was at least partially responsible for the decision. As a result, Brandt claims to have been financially ruined. Among Brandt's alleged losses were assets in his home, including four hutches of glassware that cost over $30,000.

In case number '417, Brandt proposes to sue Judge Fox, Stephen D. Willett, his ex-wife Kathleen Ann Brandt, Price County, Taylor County, and court reporter Alis A. Fox for "negligence in the injustices they caused." As damages, he requests $200,000,000.

OPINION

Brandt indicates that he wishes to bring claims in both his suits for "negligence" on the part of all parties. Although "negligence" is not a constitutional claim under 42 U.S.C. § 1983, *see Bonner v. Coughlin*, 545 F.2d 565, 567 (7th Cir. 1976), the court reads the pleadings of pro se litigants generously, *see Haines*, 404 U.S. at 521, and will consider whether Brandt has demonstrated that he is "entitled to an opportunity to offer proof" with respect to each of his claims. *Id.*

4

I. '385 Lawsuit

In his first proposed suit, Brandt alleges that he was given mind-altering drugs while in custody and that various other factors, including ineffective assistance of counsel, duress on the part of his appellate counsel and a general conspiracy among the leaders of the community precluded him from having a fair trial. The only defendant he names, however, is Judge Nielsen.

Under the doctrine of judicial immunity, judges are immune from liability "for damages for acts committed within their judicial discretion." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). "This immunity applies even when the judge is accused of acting maliciously and corruptly." *Id.* This immunity is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, which has an interest in a judiciary free to exercise its function without fear of harassment by unsatisfied litigants. *Id.* (quoting *Scott v. Stansfield*, L.R. 3 Ex. 223 (1868)). Since § 1983 does not abolish the doctrine of judicial immunity, *id.*, Judge Nielsen cannot be sued for his actions in presiding over Brandt's original trial or in denying Brandt a new trial, even if Brandt believes those decisions were incorrect or even corrupt.

Even were Judge Nielsen not immune from suit, he could not be sued for the actions of Brandt's lawyers, the actions of parole officers and other state employees, and the actions of any of the other alleged "conspirators." Section 1983 requires "personal involvement" in an alleged constitutional deprivation for a defendant to be liable. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Except during the course of trial or post-conviction proceedings, Brandt does not allege that Judge Nielsen was in any way involved in his attorneys' alleged failures, in state employees' use of police vehicles for personal ends, or for

5

parole officers' false statements and use of intimidation to control parolees. Thus, he cannot be liable for these actions under § 1983.

Because Judge Nielsen is not a proper defendant, Brandt's lawsuit against him, No. 12-cv-385, will be dismissed with prejudice.

## II. '417 Lawsuit

In Brandt's second proposed suit, he alleges the named defendants violated his rights by keeping him in custody and refusing to allow him to attend his divorce hearing, as a result of which he lost his assets unjustly. Brandt also obliquely refers to the concealment of the "real reason" for his divorce, which the court presumes is a reference to his allegations of unjust criminal conviction from his first complaint.

As an initial matter, Brandt names Judge Fox as a defendant. Like Judge Nielsen, however, he is entitled to immunity for acts that fall within the exercise of judicial discretion. *See* discussion, *supra.* He is, therefore, an improper defendant and will be dismissed.

Brandt also names lawyer Stephen D. Willett, court reporter Alis A. Fox and his ex-wife Kathleen Ann Brandt as defendants in his second suit, but provides no information as to how they were allegedly involved in keeping him from attending the divorce proceedings. As previously noted, it is well-settled that "§ 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer*, 327 F.3d at 594 (citations omitted). Brandt has alleged no facts suggesting that these three actors were personally involved in precluding him from attending the hearing, much less that they acted under color of state law. Indeed, he does not even allege facts

allowing the court to infer how they *could* have been involved. Thus, defendants Willett, Fox, and Brandt cannot be held liable for the claims pled.

Even presuming that Brandt intended to bring a § 1983 claim challenging the unfairness of the divorce hearing *in general*, he cannot recover from these three defendants. *First*, as already noted, the text of § 1983 makes clear that it is a vehicle for bringing constitutional claims against *state actors*, not private citizens. *See* 42 U.S.C. § 1983 (creating a cause of action against "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws") (emphasis added). Neither Brandt nor Willett is even a "public employee . . . acting in [his or her] official capacity" or "exercising [his or her] responsibilities pursuant to state law," nor is there any indiction that Fox used her position as a court reporter to deprive Brandt of any constitutional right.[1] *West v. Atkins*, 487 U.S. 42, 50 (1988). Thus, Brandt cannot sue any of them for any part they allegedly played in taking away his constitutional rights during the divorce proceedings.

*Second*, any challenges to the underlying fairness or correctness of the divorce judgment are barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983). Under *Rooker-Feldman* doctrine, federal district courts have no subject matter jurisdiction over cases in which an unsuccessful state court litigant alleges "injuries caused by state-court

---

[1] Brandt does allege that "a court reporter" followed Judge Nielsen's instruction to go off the record during his criminal trial, but that is part of the '385 lawsuit brought against Nielsen alone. Even if Fox *were* that reporter and properly named, she would merely have been following the direction of Judge Nielsen in going off the record.

7

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 284 (2005). This doctrine applies to any federal claim "inextricably intertwined" with a state-court judgment, such that "the district court is in essence being called upon to review the state-court decision." *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (quoting *Feldman*, 460 U.S. at 483-84 n.16). A litigant may not avoid the *Rooker-Feldman* doctrine by casting his complaint in the form of a civil rights action, as Brandt has done in this case. *Id.* at 753. Rather, litigants who feel a state court proceeding has violated their constitutional rights must appeal that decision through the state court system and then the United States Supreme Court. *See Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1990).

In part, Brandt's pleading in case number '417 invites this court to scrutinize the fairness of his underlying divorce judgment, alleging that the proceedings robbed him of thousands of dollars' worth of assets. Those particular allegations essentially invite this court to "review and reject[]" the divorce judgment, something that it cannot do. *See Exxon Mobil Corp.*, 544 U.S. at 284. Because his allegations of injustice implicate or are "inextricably intertwined" with that judgment, *Rooker-Feldman* bars federal review. *See Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008).

Finally, Brandt names Price County and Taylor County as defendants. While counties are considered "persons" for § 1983 purposes, they may not be held liable vicariously. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691-92 (1978). Rather, § 1983 claims may be brought against a municipality or other local governmental entity for actions by its employees *only* if those actions were taken pursuant to an unconstitutional policy or custom. *Id.* at 694. Thus, to demonstrate municipal liability

8

under § 1983, a plaintiff must prove that (1) the alleged deprivations were conducted pursuant to an express policy, statement, ordinance or regulation that, when enforced, caused the constitutional violation; (2) the conduct was one of a series of incidents amounting to an unconstitutional practice so permanent, well-settled and known as to constitute a "custom or usage" with the force of law; or (3) the conduct was caused by a decision of a municipal policymaker with final policymaking authority in the area in question. *Id.* at 690-91; *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Brandt does not allege any facts in his second suit suggesting that either Price County or Taylor County maintains such a specific unconstitutional policy or practice. While his suit appears to focus on the failure to bring him to court so that he could attend his divorce hearing, Brandt neither alleges facts suggesting that either Price or Taylor County maintains a policy, official or unofficial, depriving prisoners of their right to attend civil court proceedings unrelated to their criminal conviction and to which they are a party, nor that the conduct was caused by a municipal policymaker.[2]  Thus, Price and Taylor Counties must be dismissed as defendants as well.

---

[2] In his *first* lawsuit, Brandt does allege that "the court of Price County is giving mind altering drugs to inmates." (Case 12-cv-385-wmc, Compl. (dkt. #1) 2.)  Even presuming this suffices as a plausible allegation of a county custom or policy that violated Brandt's constitutional rights, Brandt has not named Price County as a defendant in that lawsuit, and the court cannot simply add the county as a defendant even if it felt some merit existed in such a claim, which it decidedly does not. *See Myles v. United States*, 416 F.3d 551, 553 (7th Cir. 2005) ("[I]t [is] unacceptable for a court to add litigants on its own motion. Selecting defendants is a task for the plaintiff, not the judge.").

ORDER

IT IS ORDERED that Case No. 12-cv-385 and Case No. 12-cv-417 are DISMISSED with prejudice.

Entered this 26th day of December, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge